UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CALVIN ELSTON, JR.,

                          Petitioner,

          v.                                          **DECISION AND ORDER**
                                                          20-CV-596-A
                                                          15-CR-200-A

UNITED STATES OF AMERICA,

                          Respondent.

Before this Court are Petitioner Calvin Elston, Jr.'s (hereinafter "Elston") *pro se*

motions: (1) to correct, vacate, and/or set aside sentence, pursuant to Title 28, United

States Code, Section 2255, *see*, Dkt. #544;[1] (2) for compassionate release pursuant

to 18 U.S.C. §3582(c), *see*, Dkt. #611;[2] and (3) for appointment of counsel.  *See*, Dkt.

#622.  For the reasons which follow, Elston's motions are **DENIED**.

## BACKGROUND

**Elston's Charges**:

On August 10, 2017, Elston was charged in ten counts of an eleven-count

Superseding Indictment with the following crimes: in Count 1, with engaging in a

continuing criminal enterprise, in violation of 21 U.S.C. §848(a);  in Count 2, with

conspiracy to possess with intent to distribute, and to distribute, 400 grams or more

---

[1] References herein, unless otherwise indicated, are to documents filed on this Court's
Docket in case 18-CR-71-A.

[2] This is the Elston's second motion for compassionate release. His first compassionate
release motion, *see*, Dkt. #542, was denied by Order of this Court dated August 12,
2020. *See*, Dkt. #565.  By mandate issued May 4, 2022, the Second Circuit affirmed this
Court's order denying Elston compassionate release. *See*, Dkt. #607.

of a mixture and substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), and quantities of oxymorphone and oxycodone, Schedule II controlled substances, in violation of 21 U.S.C. §§846, 841(b)(1)(A), and 841(b)(1)(C); in Count 3, with unlawfully possessing with intent to distribute and distributing of 400 grams or more of fentanyl, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(A); in Count 4, with unlawfully possessing with intent to distribute and distributing oxycodone, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C); in Count 5 with unlawfully possessing with intent to distribute and distributing oxymorphone, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C); in Count 6, with unlawfully acquiring and obtaining possession substances by fraud, in violation of 21 U.S.C. §843(a)(3); in Counts 8 through 10, with unlawfully possessing with intent to distribute and distributing fentanyl, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C); and in Count 11, with maintaining a drug-involved premises, in violation of 21 U.S.C. §856(a)(1).

Of the charges in the Superseding Indictment, three counts carried with them offense for which Elston faced potential sentences of up to life imprisonment. Specifically, Count 1, the CCE count, carried a statutory mandatory minimum term of imprisonment of 20 years and a maximum of life imprisonment. *See*, 21 U.S.C. §848(a).  In addition, under Counts 2 and 3, Elston, based upon the drug quantity alleged in those counts as well as his prior criminal history, was facing a possible statutory mandatory minimum term of imprisonment of life, in the event that the Government filed the appropriate information alleging his two prior convictions for drug

felony crimes as the basis for enhanced penalties. *See*, 21 U.S.C. §§841(b)(1)(A) and 851.

**Elston's Plea**:

In his written plea agreement, Elston agreed to plead guilty to Count 2, which charged him with conspiracy to possess with intent to distribute, and to distribute, 400 grams or more of a mixture and substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), and quantities of oxymorphone and oxycodone, Schedule II controlled substances.   Based upon the drug quantity alleged therein, Count 2 carried a mandatory minimum term of imprisonment of 10 years and a maximum of life. *See*, Dkt. #411, ¶1.

Notably, in the agreement negotiated on Elston's behalf by his attorney, Samuel P. Davis, Esq., the government specifically agreed not to file an information pursuant to 21 U.S.C. §851.  Consequently, Elston was subject to a mandatory minimum term of imprisonment of 10 years and was not subject to any enhanced mandatory minimum penalties of either 20 years imprisonment or life imprisonment—had the government alleged one or both of his prior drug felony convictions, respectively, as the basis for enhanced punishment under 21 U.S.C. §§ 841(b)(1)(A) and 851. *See*, Dkt. #411, ¶2. [3]   During his plea colloquy, Elston expressly acknowledged that but-for

_____

[3] 21 U.S.C. §841(b)(1)(A), was modified by the First Step Act. Although the changes were not retroactive, section 401 of the Act, which became effective December 18, 2018, changed both the predicate conviction required from a "felony drug offense" to a "serious drug felony" and reduced the mandatory minimum sentence for offenses under 21 U.S.C. § 841(b)(1)(A) committed after a prior conviction for a 'serious drug felony' from 20 years to 15 years imprisonment for an individual who has one such predicate conviction and from life to 25 years imprisonment for an individual who has two such

the efforts of his attorney,   *see*, Dkt. #640, pp.6-8, Elston would have faced a mandatory minimum sentence of life imprisonment under Count 2, had the government, prior to his plea, filed the requisite §851 information alleging his two prior drug felony convictions.

As part of his plea agreement, Elston admitted that he and his coconspirators were involved in no less than 253 illegal prescription drug transactions involving oxycodone, fentanyl, oxymorphone, and amphetamines.   *See*, Dkt. #411, pp. 2-11, ¶5(a) through (f).  Elston expressly admitted that:

> at least 3,000 kilograms but less than 10,000 kilograms of marijuana is the amount of defendant's relevant conduct encompassed in Count 2 of the Superseding Indictment which could be readily proven by the government against the defendant. For the fentanyl alone, over 400 grams of fentanyl could be readily proven by the government against the defendant.

Dkt. #411, p. 11, ¶5(f).  The plea agreement indicated that at sentencing Elston, with a total offense level of 37 and a criminal history category of II, was facing a Guideline's term of imprisonment of 235 to 293 months.  Dkt. #411, p. 13, ¶13. It further indicated that Elston understood "that at sentencing [he] is subject to the minimum and maximum penalties set forth in ¶1 of this [plea] agreement."   *Id*.   Finally, the plea agreement provided that Elston was "knowingly waiv[ing] the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls

---

predicate convictions. *Compare* 21 U.S.C. § 841(b)(1)(A) (2010) *with* 21 U.S.C. § 841(b)(1)(A) (2018).

within or is less than the sentencing range for imprisonment…set forth in Section III, ¶13, above…". Dkt. #411, p. 17, ¶24.

On July 11, 2018, Elston appeared before this Court and after being placed under oath, the Court engaged Elston in an extensive plea colloquy. *See*, Dkt. #640, pp. 1-36, *See*, 15-CR-200-A, Minute Entry, dated July 11, 2018.  As part of that colloquy, the Court asked Elston numerous questions regarding his satisfaction and communication with his attorney, and his understanding of the plea proceedings:

THE COURT:     It's also very important you understand what your rights are. If, at any time, during the course of these proceedings, there's something you do not understand, you want to ask me a question, you want to consult with Mr. Davis, you want something further explained to you, you're free to do so. You're encouraged to do so. It's not important that we get this over with as quickly as possible. What's important is that I'm satisfied that you fully understand what your rights are. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT:     Now, it's my understanding you're here today to waive certain rights and to plead guilty to Count 2 of the indictment under the terms and conditions of the plea agreement. Do you understand this charge, sir?

THE DEFENDANT: Yes, sir.

THE COURT:     Okay. Mr. Davis, you've gone over this charge with your client. Are you satisfied he understands it?

MR. DAVIS:     Yes, Your Honor.

THE COURT:     Any reason for me to go through any further explanation?

MR. DAVIS:         No, Your Honor.

THE COURT:         This is a superseding indictment?

MR. ADLER:         Yes, Your Honor.

THE COURT:         Okay. And you've explained to him the terms and conditions of the plea agreement, Mr. Davis?

MR. DAVIS:         Yes, Your Honor.

THE COURT:         He understands them?

MR. DAVIS:         Yes, Your Honor.

THE COURT:         And you explained to him his rights under Rule 11, right to a trial, et cetera?

MR. DAVIS:         Yes, Your Honor. He understands that very well.

THE COURT:         Now, Mr. Elston, you discussed this with your attorney. He's explained to you what your legal rights are, what your legal options are. You probably didn't like to hear what he had to tell you, but he's not there to make you feel good. He's there to be your lawyer. And, apparently, based on those discussions, you're here today to waive certain rights and to plead guilty to this charge under the terms and conditions of the plea agreement. Are you fully satisfied with the advice and counsel you received from Mr. Davis?

THE DEFENDANT: Yes, Your Honor.

THE COURT:         Any complaints at all?

THE DEFENDANT: No, Your Honor.

Dkt. #640, pp. 2-4.

Additionally, during his plea colloquy, Elston specifically acknowledged that he understood that he was facing a mandatory minimum term of imprisonment of 10 years and a maximum term of life imprisonment. *Id.*, p. 5.  With respect to the

government's agreement not to file an information under 21 U.S.C. §851, the following

colloquy took place:

| | |
|---|---|
| [AUSA]: | The government agrees that an information pursuant to Title 21, United States Code, Section 851, will not be filed with respect to the charges in the superseding indictment. |
| THE COURT: | What's the effect of that? |
| [AUSA]: | Judge, that would have been a mandatory minimum of life in this case. |
| THE COURT: | So, do you understand that, sir? If you went to trial, and if you were convicted on these charges, and with the government filing the 851, if you were convicted, you'd be -- spend the rest of your life in jail. But because your lawyer was able to negotiate a plea with the government, the maximum sentence that you can face, well, would be – the maximum is -- well, it's a -- minimum is ten. |
| [AUSA]: | The minimum -- the mandatory -- |
| THE COURT: | But it's a guideline range that falls way below life. |
| [AUSA]: | Yes, Your Honor. |
| THE COURT: | So, that was the result of Mr. Davis's efforts on Mr. Elston's behalf? |
| [AUSA]: | Persistent efforts. |
| THE COURT: | The government is willing to give – you give up that life -- mandatory life for another range, which we'll talk about in a few minutes. |
| [AUSA]: | Yes, Your Honor. |
| THE COURT: | Do you understand that, sir? |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Yeah. If you went to trial, and you were convicted, you would never be out of prison. |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | This now allows you a range -- we'll get to that in a few minutes -- a much lesser range. So, even though |

it's a long period of time, it's not the rest of your life. Big difference. That was a result of Mr. Davis's efforts negotiating with the government to work out a plea that would give you a sentence much less than life imprisonment. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT:     Okay. When we go through them, you let me know if you have any questions, all right?

THE DEFENDANT: Yes, Your Honor.

THE COURT:     Okay.

*Id.*, pp. 6-8.

During the colloquy, Elston further acknowledged his understanding that the drug quantity involved in his relevant conduct converted to between "at least 3,000 kilograms but less than 10,000 kilograms of marijuana" and that "[f]or fentanyl alone, over 400 grams of fentanyl could be readily proven by the government against [him]." *Id.*, p. 12. He also specifically expressed his understanding that his sentencing range included a term of imprisonment of 235 to 293 months, *id.*, p. 18, and further acknowledged his understanding that he was giving up his right to appeal or collaterally attack any sentence that fell within or was below that range. *Id.*, p. 20-21.

Finally, prior to entering his plea of guilty the following exchange took place between the Court and Elston:

THE COURT:          Okay. Now, Mr. Elston, we've gone over the agreement in Court. You indicated you understand it. You signed it indicating you understand it. Your lawyer says he's gone over it with you. He's satisfied you understand it. Any questions, Mr. Elston?

8

| | |
|---|---|
| THE DEFENDANT: | No, Your Honor. |
| THE COURT: | Are those all the terms and conditions of the plea agreement which we just read here in court? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | No one's made any other promises to you, have they? |
| THE DEFENDANT: | No, Your Honor. |

*Id.*, p. 23.

**Elston's Sentencing:**

A Presentence Investigation Report ("PSR") prepared by the United States Probation Office ("Probation")—consistent with the calculation set forth in Elston's plea agreement—calculated Elston's United States Sentencing Guidelines ("Guidelines") range for incarceration to be properly calculated at 235 to 293 months imprisonment. Dkt. #529.   On May 21, 2019, this Court adopted the Guidelines calculations set forth in the PSR and sentenced Elston at the low-end of the Guidelines range to a term of imprisonment of 235 months. Dkt. #530.  Elston did not file a notice of appeal.

According to the BOP website, Elston's scheduled release date is August 11, 2033.

## ANALYSIS

### I.    THE §2255 MOTION

In his *pro se* §2255 motion, Elston, citing the Supreme Court decision in *Alleyne v. United States*, 570 U.S. 99 (2013), first claims that his attorney's failure to object to

the drug quantity determined by the Court at the time of sentencing constituted ineffective assistance. *See*, Dkt. #544, p.16. Elston further claims that his attorney was ineffective for failing to file an appeal. *See*, Dkt. #544, p.17. Construing Elston's submissions "liberally" and interpreting them so as "to raise the strongest arguments that they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), this Court reads Elston's claim as suggesting that his attorney's performance rendered his plea unknowing and involuntary.

### A.  Legal Standard - Section 2255

Section 2255 permits a prisoner in federal custody to move to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). "A petition for relief under Section 2255 shall only be granted for a constitutional error when the sentencing court lacked jurisdiction or when a miscarriage of justice arises due to an error of law or fact which created a fundamental defect." *Lopez v. United States*, 792 Fed. App'x. 32, 35 (2d Cir. 2019) (citations omitted). Relief under Section 2255 is

reserved "for prejudicial errors that are so grave, they result in a complete miscarriage of justice." *Kassir v. United States*, 3 F.4th 556, 564 (2d Cir. 2021) (internal quotation marks, brackets and citations omitted).

### B. Legal Standard – Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. at 687–88, 692–93 (1984)). The burden of showing ineffective assistance is "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (cleaned up).

"The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" *Id*. at 129–30 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). The standard for evaluating the adequacy of counsel's representation is "a most deferential one," *Harrington*, 562 U.S. at 105, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Thomas*, 608 Fed. App'x. 36, 38 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 690). As pertinent here, "failure to make a meritless argument does not rise to the level of ineffective assistance" of counsel. *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995), citing *United States v. Javino*, 960 F.2d 1137, 1145

(2d Cir. 2009).  Likewise, defense counsel is not obligated to raise objections that under the circumstances would be frivolous.  *See*, *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005).

Should petitioner clear this first hurdle by demonstrating ineffective performance by counsel, prevailing on a § 2255 petition then requires demonstrating actual prejudice from identified errors. *Harrington*, 689 F.3d at 129 (citing *Strickland*, 466 U.S. at 668, 687–88, 692–93). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  When the challenge is to the sentence imposed, the prejudice prong mandates that petitioner show either that counsel's failings "suffice to undermine [ ] confidence in the outcome of [the] original sentencing," *Gonzalez v. United States*, 722 F.3d 118, 136 (2d Cir. 2013), or "would have changed ... the sentence imposed," *Strickland*, 466 U.S. at 700. Where, as here, petitioner has been convicted by way of a plea, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## C. Analysis

At the outset, the Court notes that in response to Elston's motion, the Government submitted to the Court an affidavit from Elston's attorney, Samuel P. Davis, Esq.  Dkt. #563-1. In it, attorney Davis directly refutes both of Elston's claims, set forth in his §2255 motion, that: (1) Elston "was not aware that he was going to be sentenced to mopre [sic] than 10 years," *see*, Dkt. #544, p. 3; and (2) that attorney

Davis failed to abide Elston's request to file a notice of appeal. *See*, Dkt. #563-1, p. 3, ¶11 ("I explained to Mr. Elston at nauseum the mandatory minimum gave the judge the option to give him less than twenty years. I never told Mr. Elston he would only receive a ten-year sentence."); Dkt. #563-1, p. 4, ¶13 ("I was never told by Mr. Elston to nor did I agree to file a Direct Appeal.").  Such affidavit, which directly refutes the belated and bare-bones assertions set forth in Elston's §2255 motion, is, in this Court's view, sufficient in and of itself to warrant the denial of Elston's §2255 motion without a hearing.  *See, Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009)

But even if it were not, this Court,  in assessing Elston's claim that his plea was not knowing and voluntary, is "entitled to rely upon the defendant's sworn statements, made in open court," at the time of the plea colloquy.  *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001).  Here, Elston's arguments run counter not only to his written plea agreement with the government, but also to the sworn testimony he gave to this Court at his change of plea hearing.  *See*, Dkt. #640, pp. 1-36.

In that regard, this Court observes that Elston's written plea agreement advised him of the maximum penalties he faced at sentencing. Dkt. #441, ¶¶ 1-3.  In addition, the plea agreement set forth the elements—including the type and quantity of controlled substances involved, *see*, *id.*, ¶ 4—of the crime to which Elston was pleading guilty, as well as a detailed explanation of those facts which established each and every element of that crime. *Id.*, ¶¶ 5(a) through (f).  The agreement further recounted in detail Elston's sentencing exposure under the Guidelines for the crime to which he agreed to plead guilty. *Id.*,  ¶¶ 6-13. Pursuant to the terms of the plea

agreement, the parties contemplated that Elston's Guidelines range was a period of imprisonment of 235 to 297 months. *Id.*, ¶ 13.  Furthermore, in the plea agreement, Elston  agreed not to challenge any sentence of imprisonment that fell within or below that range. Id., ¶ 24.

Specifically, the defendant agreed:

> 24. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, [*i.e.,* 235 to 297 months] notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

> 25. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

*Id.*, ¶¶ 24-25.

Finally, in signing the plea agreement, Elston disclaimed that any other promises or understandings existed except for those described in the plea agreement. *Id.*, p. 21; *see also*, Dkt. #640, p. 23.

Statements at a plea allocution "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  "[U]nsupported allegations which merely contradict [a defendant's] earlier statements made under oath at his plea allocution" do not provide sufficient grounds for withdrawal of a guilty plea as

involuntary. *United States v. Gonzalez*, 970 F.2d 1095, 1100–01 (2d Cir.1992); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea.").

Here, Elston's claims that his attorney was ineffective under *Alleyne* in failing to challenge the drug quantity at sentencing and that he did not understand that he could receive a sentence of more than 10 years are frivolous.[4]  Both in his written plea agreement and in his plea colloquy with this Court, see, Dkt. #411, p.11; Dkt. #640, pp. 12-14,  Elston expressly admitted that his relevant conduct included "over 400 grams of fentanyl"—the threshold amount necessary to trigger the 10-year mandatory minimum sentence under 21 U.S.C. §841(b)(1)(A).  Since all the relevant sentencing facts necessary to trigger the mandatory minimum sentence (*i.e.,* more than 400 grams of fentanyl) were admitted by Elston during his plea allocution, such admission is the equivalent of a jury finding.  *See, United States v. Doe*, 66 Fed. App'x. 249, 252 (2d Cir.2003) ("[B]ecause all the relevant sentencing facts were admitted in a plea allocution, the equivalent of a jury finding, *Apprendi* has no relevance to this case."); *see also, United States v. Johnson*, 732 F.3d 577, 584 (6th Cir.2013) ("We have recognized that *Alleyne* 's extension of *Apprendi* ... left undisturbed our decisions holding that a defendant's knowing admission of the facts necessary for an enhanced

---

[4] *Alleyne* simply extended the logic of *Apprendi v. New Jersey*, 530 U.S. 466 (2000)— which required that any fact, apart from criminal history, that triggers or increases a statutory maximum penalty to be found by the jury or, in the case of a plea, admitted by the defendant—to facts which trigger or increase mandatory minimum penalties.

sentence is fatal to his *Apprendi* claim.").  Thus, Elston's admission of drug quantity in his plea is fatal to his *Alleyne* claim.  *See, United States v. Washington*, 103 F.4th 917, 923 (2d Cir. 2024)("[A] judge selecting a sentence within a statutorily authorized range is not limited – at least by the Sixth Amendment – to considering facts found by a jury or admitted by the defendant. Of course, the same is not true for 'facts that increase either the statutory maximum or minimum.' *Alleyne*, 570 U.S. at 113 n.2").

In the end, attorney Davis can hardly be faulted for failing to raise the frivolous and meritless *Alleyne* argument which Elston now urges on the Court.  *See, e.g.*, *Oehne v. United States*, No. 3:14-CV-00044 (JCH), 2016 WL 10721817, at *10 (D. Conn. Oct. 20, 2016)("Because [Petitioner]'s *Apprendi* argument is factually unsupported and legally meritless, his contention that defense counsel failed to provide constitutionally adequate assistance because he did not raise this argument at [Petitioner]'s sentencing proceeding likewise fails."). To the contrary, the record demonstrates that attorney Davis's representation of Elston was highly effective as he was able to negotiate a plea deal which avoided Elston being subject to a statutory mandatory minimum term of imprisonment of life.

Additionally, the collateral attack waiver in Elston's Plea Agreement further bars his motion. Because the record establishes that Elston's plea was knowing and voluntary and because this Court sentenced Elston to a term of 235 months imprisonment (*i.e.*, the low-end of the 235 to 293 months' imprisonment calculated by both the parties in their plea agreement and Probation in its PSR), this Court's thorough inquiry into the Elston's understanding of the plea agreement, and the waiver

contained in paragraph 24 of his plea agreement, ends the inquiry as to whether the waiver is enforceable. *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam) (affirming the district court's conclusion that a § 2255 petitioner's waiver of appeal and collateral attack rights was knowing and voluntary, even though "[t]he defendant was not asked about and did not specifically address the waiver" during the plea allocution); *see also United States v. Morales*, 407 Fed. App'x. 528, 531 (2d Cir. 2011) (summary order) (holding that knowing and voluntary waiver of appellate rights established where district court specifically called defendant's attention to that portion of the plea agreement); *United States v. Fisher*, 232 F.3d 301, 304 (2d Cir. 2000) ("Whether the waiver is enforceable depends on the nature of the waiver and the defendant's informed consent to it, as ascertained by the district judge at the time the plea is entered pursuant to the plea agreement in which the appellate waiver is set forth.")

In the end, given the affidavit from Elston's attorney and Elston's own statements under oath at his change of plea proceeding, and the presumption that those statements were true, his current claims are simply not credible, and his request for habeas corpus relief based upon an unknowing and involuntary plea and failure to file a notice of appeal are **DENIED**.

## II.    THE § 3582(c)(1) MOTION

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under Section 3582(c)(1)(A)(i) only

after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.  Here, the government concedes that Elston has exhausted his administrative remedies in seeking relief from prison authorities. See, Dkt. #614, p. 6 ("the government acknowledges that the defendant has exhausted his administrative remedies.").

Finding exhaustion, this Court must next engage in two additional inquiries. First, the Court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021).  Section 3553(a) lists various factors a court must review when imposing a sentence, and include the following considerations: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).  Second, the Court must determine whether the person seeking release has "demonstrate[d] that his circumstances are indeed 'extraordinary and compelling' such that, considering these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would

not simply constitute second-guessing of the sentence previously imposed." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).[5]

In Amendment 821 to the Guidelines, effective as of November 1, 2023, and later made retroactive, the Sentencing Commission amended the policy statement contained at Guidelines § 1B1.13 to provide guidance as to what constitutes extraordinary and compelling circumstances. As relevant here, the amended policy statement recognizes that family circumstances may constitute extraordinary and compelling reasons, as, for example, in cases involving (i) the death or incapacitation of the caregiver of the defendant's minor child; (ii) the incapacitation of the defendant's spouse or registered partner; and (iii) analogous circumstances in which the defendant would be the "only available caregiver" for an immediate family member. *See* Guidelines § 1B1.13(b)(3); *see also id*. § 1B1.13(b)(5) (noting that extraordinary and compelling circumstances may be found where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."). Even if a court finds that a defendant has established an extraordinary and compelling reason

---

[5] Court's analyzing a compassionate release request need not consider these two factors in any particular order. As the Second Circuit has recognized: "A motion under § 3582(c)(1)(A) must demonstrate both extraordinary and compelling reasons justifying release and that a sentence reduction is consistent with the sentencing factors set forth in § 3553(a), so a district court may deny a motion based solely on the latter without reaching the former." *United States v. McLean*, No. 22-1176(CON), 2023 WL 8253680, at *1 (2d Cir. Nov. 29, 2023), *cert. denied*, 144 S. Ct. 1376 (2024).

for a reduction in sentence, it must still consider the Section 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A)(i).

Here, the Court finds that "extraordinary and compelling circumstances" do not exist such that a reduction of Elston's sentence is warranted.  First and foremost, the children to whom Elston refers are no longer minors—their current ages are 23, 20, and 18. *See*,  Dkt. #611, p.9 (filed under seal). Such fact alone diminishes any argument that the childcare situation confronting Elston is extraordinary and compelling.  Moreover, Elston's PSR establishes that he has six siblings residing in the Buffalo, NY area: three maternal half siblings and three paternal half siblings. *See*, Dkt.# 529 at 40. The defendant provides no letters nor explanation as to the availability for assistance from three such siblings, and at least one of the siblings from whom Elston did submit a letter, indicates that she <u>is</u> willing to take temporary custody of one of his children.  *See*,  Dkt. #611, p.16 (filed under seal).

In addition, Elston was married to co-defendant Jennifer Courton, who is the mother of the three children mentioned in Elston's motion. At present time, Ms. Courton has an estimated release date over 4 years earlier than the defendant. The defendant provides no explanation why his earlier release is warranted where Ms. Courton is already scheduled for release at an earlier date. Moreover, Ms. Courton's father, co-defendant Rodney Courton, was released in 2021 and is no longer incarcerated. The defendant fails to provide any explanation why Mr. Courton, as the children's grandfather, is unavailable to assist with the children now that he is out of custody. Ms. Courton also has a large family with five half siblings. The defendant also

fails to provide any explanation for why the children's maternal family cannot assist him.  Thus, Elston has failed to carry his burden of establishing that his circumstances are extraordinary and compelling.  *United States v. Roney*, No. 10-CR-130S, 2020 WL 2846946, at *2 (W.D.N.Y. June 2, 2020) ("[t]he defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute."), *aff'd*, 833 Fed. App'x. 850 (2d Cir. 2020).

Moreover, even assuming for the sake of argument that this Court found that Elston had established extraordinary and compelling circumstances, this Court, upon consideration of the factors set forth in 18 U.S.C § 3553(a) and all the circumstances presented, would nevertheless decline to exercise its discretion to reduce Elston's sentence.  As this Court noted in its prior text order, entered August 12, 2020, denying Elston's first motion for compassionate release:

> [T]he § 3553(a) factors do not weigh in favor of release. Defendant presents a danger to others and the community. He was sentenced in May 2019 to 235 months of incarceration, to be followed by 5 years of supervised release, after pleading guilty to violating 21 U.S.C. § 846 (conspiracy to distribute, and obtain through fraud, controlled substances). Defendant was the leader of a large-scale conspiracy. The factual basis for defendant's plea was that he and co-defendant Jennifer Courton recruited various vulnerable individuals (some with drug addictions of which he was aware) to obtain prescriptions that were sold at a large profit. In recruiting others, defendant "played upon impulses, friendship, affection, or some combination thereof to get individuals involved", including his father, co-defendant Rodney Courton. Defendant also paid a nurse practitioner (co-defendant Brandon Coburn) to write scripts for the prescriptions (fentanyl, oxycodone, oxymorphone, and amphetamine), i.e. 253 prescriptions from July 2013 to May 2015. See Dkt. No. 411 (Plea Agreement), ¶ 5. Defendant remains a danger to the community due to the aforementioned criminal conduct.

Dkt. #565, Text Order, date August 12, 2020.  That finding, which was affirmed by the Second Circuit, continues to apply with equal force today.  Accordingly, the Court once again declines to exercise its discretion to reduce Elston's sentence.

## **CONCLUSION**

For the reasons stated above, Elston's motion to correct, vacate, and/or set aside sentence, pursuant to Title 28, United States Code, Section 2255, *see,* Dkt. #544, is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Elston has not made a substantial showing of the denial of a constitutional right. Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Elston is advised that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal," and "[a] timely notice of appeal must be filed even" though the Court declined to issue a certificate of appealability. Rule 11(b) of the Rules Governing Section 2255 Proceedings.

Further and for the reasons set forth above, Elston's motion for compassionate release pursuant to 18 U.S.C. §3582(c), *see,* Dkt. #611, is **DENIED**.

In view of the foregoing, Elston's motion for appointment of counsel *see,* Dkt. #622, is **DENIED** as moot.

**IT IS SO ORDERED.**

s/Richard J. Arcara
_____
HONORABLE RICHARD J.  ARCARA
SENIOR U.S. DISTRICT JUDGE

Dated:  September 27, 2024
        Buffalo, New York