UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA ,

    v.                                                **DECISION AND ORDER**
                                                        15-CR-200-A

CALVIN ELSTON, JR.,

                    Respondent.

Before this Court is Defendant Calvin Elston, Jr.'s (hereinafter "Elston") *pro se* "Combined Motion to Adjust Restitution Payment Schedule and to Allow Defendant to Communicate with his Wife" (hereinafter the "Combined Motion"), which asks this Court: (1) to adjust his restitution payments; and (2) to direct the Government to allow him to communicate with his wife, who is also currently in the custody of the Bureau of Prisons. See, Dkt. #636.  *See*, Dkt. #622.  For the reasons which follow, Elston's motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Familiarity with the facts giving rise of Elston's arrest, prosecution, and sentencing are presumed. Briefly, having previously been charged in ten counts of an eleven-count Superseding Indictment with various drug offenses, Elston, on July 11, 2018, appeared before this Court and pleaded guilty, pursuant to a written plea agreement, to Count 2, which charged him with conspiracy to possess with intent to distribute, and to distribute, 400 grams or more of a mixture and substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), and quantities of

1

oxymorphone and oxycodone, Schedule II controlled substances.  Based upon the drug quantity alleged therein, Count 2 carried a mandatory minimum term of imprisonment of 10 years and a maximum of life. *See*, Dkt. #411, ¶1.  A Presentence Investigation Report ("PSR") prepared by the United States Probation Office ("Probation")—consistent with the calculation set forth in Elston's plea agreement—calculated Elston's United States Sentencing Guidelines ("Guidelines") range for incarceration to be 235 to 293 months imprisonment. Dkt. #529.

On May 21, 2019, this Court adopted the Guidelines calculations set forth in the PSR and sentenced Elston at the low-end of the Guidelines range to a term of imprisonment of 235 months. Dkt. #530.  As part of the sentence, the Court also order ordered Elston to pay $62,651.11 in restitution joint and several with other named co-defendants; the Court further ordered that such restitution was due and payable immediately.  Dkt. #530. The Court further ordered that:

> While incarcerated, if [Elston] is non- UNICOR or UNICOR grade 5, [Elston] shall pay installments of $25 per quarter. If assigned grades 1 through 4 in UNICOR, [Elston] shall pay installments of 50% of the inmate's monthly pay. After considering the factors set forth in 18 U.S.C. §3664(f)(2), while on supervision, [Elston] shall make monthly payments at the rate of 10% of monthly gross income.

*Id*. at 7.  Elston did not appeal his conviction or sentence.

Since his sentencing, Elston filed two unsuccessful compassionate release motions, *see*,  Dkt. #542, #611, as well as an unsuccessful motion, *see*, Dkt. #544, to correct, vacate or set aside his sentencing pursuant to Title 28, U.S.C. Section 2255. *See*, Dkt. #565, #597, #642.

According to the BOP website, Elston, who is currently in BOP custody at a Federal Medical Center in Massachusetts, has a scheduled release date of August 11, 2033.

On August 9, 2024, Elston filed the instant Combined Motion. *See*, Dkt. #636. On September 27, 2024, the Government filed a response in opposition. *See*, Dkt. #641. For the reasons which follow, Elston's Combined Motion is **GRANTED IN PART AND DENIED IN PART**.

## DISCUSSION

### I.   MOTION FOR ADJUSTMENT OF HIS PAYMENT RESTITUTION SCHEDULE

Elston first requests that this Court "adjust his restitution payments to suspend his payments until he is released." Dkt. #636, p. 1. Specifically, Elston argues that pursuant to 18 U.S.C. § 3664(k), this Court has authority to adjust his restitution payments. *Id*.

The Government opposes Elston's motion exclusively by arguing that this Court lacks jurisdiction to grant such motion. Specifically, the Government maintains that "Courts have consistently held that the relief the Defendant seeks must be pursued in a habeas corpus proceeding pursuant to 28 U.S.C. § 2241, rather than a motion to modify." Dkt. #641, pp. 1-2. Thus, the Government maintains that a motion pursuant to 18 U.S.C. § 3664(k) cannot provide Elston with any relief and that the exclusive mechanism by which Elston may challenge the restitution order imposed by this Court

is a habeas corpus proceeding pursuant to 28 U.S.C. § 224. *Id*., pp. 2-3 . According to the Government, since Elston is not held in custody in this District, no challenge under § 2241 can be brought in this Court. *Id*., pp. 2-3. Relying on the Fifth Circuit's decision in *United States v. Diggs*, 578 F.3d 318, 319 (5th Cir. 2009), the Government argues that since "prisoners challenging their IFRP [Inmate Financial Responsibility Program] payment plans must do so under § 2241." As the Government notes because IFRP payment schedules are "administered by the BOP" and are not "court-ordered repayment schedule[s]," *see*, *Diggs*, 578 F.3d at 319, this Court is without discretion to modify his payment schedule.

If Elston's challenge was limited solely to modifying the amount of his IFRP payments—but otherwise maintaining such payments during his term of incarceration—then the Court would agree with the Government's view. However, here, citing his health problems, Elston's primary request for relief is that this Court's Restitution Order be amended by removing completely his obligation to make payments until after he is released from custody. As Elston is seeking the suspension of all of his restitution payments during the remainder of his time in custody, the very authority cited by the Government actually supports his position that this Court has the authority to do just that. *See*, *Diggs*, at 319-20 ("Were [the defendant] challenging a court-ordered repayment schedule (such as the $100 a month he must pay during supervised release), suit could be brought under [18 U.S.C] § 3664(k)."); *see also,* 18 U.S.C. § 3664(k) (allowing "the court" to "adjust the payment schedule" for restitution "as the interests of justice require" when the defendant notifies the court "of any

4

material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution").

Indeed, several District Judges in this Circuit have granted similar requests, pursuant to 18 U.S.C. § 3664(k), ordering a stay of an individual's restitution payments until such individual is released from custody.  *See, United States v. Yeghoyan*, No. 20 CR. 652 (VM), 2024 WL 2327866, at *1 (S.D.N.Y. May 22, 2024)(Judge Marrero); *United States v. Borker*, No. 22-CR-273 (JSR), 2023 WL 8715721, at *1 (S.D.N.Y. Dec. 18, 2023)(Judge Rakoff); *United States v. Bowles*, No. 98 CR.1281 DLC, 2003 WL 21396691, at *1 (S.D.N.Y. June 16, 2003)(Judge Cote).  As Judge Weinstein has observed, "[I]f the defendant's economic circumstances change so that the defendant's ability to pay is impaired, the court may adjust the payments accordingly without discharging the defendant's obligation to pay full restitution." *United States v. Golino*, 956 F.Supp. 359, 366 (E.D.N.Y. 1997).  Because "[t]he circumstances of [Elston]'s physical ailments have fundamentally impacted his economic circumstances and have, consequently, rendered him unable to make restitution payments while incarcerated," *United States v. Bowles*, 2003 WL 21396691, at *2, and because the Government has not contradicted Elston's claim that his condition precludes his employment while in custody, this Court will suspend his restitution payments until Elston's incarceration is complete. Should Elston's economic circumstances change, this Court should be advised and this Order may be modified.

Accordingly, Elston's motion is **GRANTED** to the extent that his requirement to make restitution payments is suspended for the duration of his term of incarceration,

5

subject to further modification if this Court is notified that Elston's circumstances have changed.

## II.     MOTION TO COMMUNICATE WITH HIS WIFE

.      Elston, complaining that his is unable to communicate with his wife, Jennifer Courton-Elston, who is his codefendant also in federal custody, requests that this Court "issue an order directing the government to contact prison officials and notice [sic] prison officials that its position is to allow the Defendant to communicate with his wife so long as such communication is authorized by BOP Policy." Dkt. #636, p.1. Here, Elston's claim regarding his inability to communicate with his wife amounts to a challenge of the conditions of his confinement.

In *Jenkins v. Haubert*, 179 F. 3d 19, 28 (2d Cir. 1999), the Second Circuit provided a clear and concise definition of the meaning of the term "conditions of confinement:"

> 'Conditions of confinement' is not a term of art; it has plain meaning. It quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment. These include ... general conditions affecting a prisoner's quality of life such as ... the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution. In short, any deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement.

(citing *Figueroa v. Rivera*, 147 F.3d 77, 82) (1st Cir. 1998); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir. 1994).  Since Elston's request to communicate with his wife

involves the conditions under which he is being held—rather than the "fact or duration" of his confinement—it clearly implicates the conditions of his confinement. The Second Circuit has held that prisoners in federal custody may seek habeas relief related to the conditions of their confinement under 28 U.S.C. § 2241, *see Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted § 2241 as applying to challenges to the execution of a federal sentence, 'including such matters as the administration of parole, ... prison disciplinary actions, prison transfers, type of detention and prison conditions.' ").

Nevertheless, "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions." 28 U.S.C. § 2241(a). The Supreme Court has "interpreted this language to require 'nothing more than that the court issuing the writ have jurisdiction over the custodian.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)(quoting *Braden v. 30th Judicial Circuit Court of Ky*., 410 U.S. 484, 495 (1973)). Here, even if the Court were to construe Elston's pro se challenge as one under § 2241, since Elston is held in custody outside the Western District of New York, this Court is without jurisdiction to consider his challenge to the conditions of his confinement.

Furthermore, the Prison Litigation Reform Act (PLRA) states that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *See Ross v. Blake*, 578 U.S. 632, 638–39 (2016); *see also Jones v. Smith*,

7

720 F.3d 142, 145 n.3 (2d Cir. 2013) (recognizing application of PLRA to § 2241 petition challenging conditions of confinement). In addition, federal courts independently require that prisoners exhaust administrative remedies before seeking judicial relief pursuant to 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001) (prisoner must exhaust administrative remedies before challenging loss of good time credits). Elston's failure to demonstrate his exhaustion of administrative remedies provides a further basis to deny his request that this Court intervene in his efforts to communicate with his wife.

## **CONCLUSION**

For the reasons stated above, Elston's motion seeking adjustment of his restitution payment schedule and allowing him to communicate with his wife, *see,* Dkt. #636, is **GRANTED IN PART AND DENIED IN PART.** Specifically, so much of Elston's motion as seeks to suspend his restitution payments during the duration of his term of incarceration is **GRANTED**, subject to further modification if this Court is notified that Elston's circumstances have changed. The remainder of his motion is **DENIED**.

Additionally, the Court notes that on September 27, 2024, this Court entered a Decision and Order, *see,* Dkt. #642, which, *inter alia*, denied Elston's second motion, *see,* Dkt. #611, for compassionate release. In view of this Court's denial of his second motion for compassionate release, this Court's prior order, *see,* Dkt. #642, should have also denied, Elston's outstanding motion for an evidentiary hearing on his compassionate release request. *See*, Dkt. #618. Accordingly, Elston's motion for an

evidentiary hearing regarding his second compassionate release request, *see*, Dkt. #618, is also **DENIED**.

    **IT IS SO ORDERED.**

                                                *s/Richard J. Arcara*
                                      HONORABLE RICHARD J. ARCARA
                                      SENIOR U.S. DISTRICT JUDGE

Dated: October 9, 2024
       Buffalo, New York